## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

BRIAN TULLIS WILLIAMS,

      Petitioner,

v.                                        Case No. 3:18cv638-LC-MJF

MARK S. INCH,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Brian Tullis Williams has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 7). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 24). Williams replied. (Doc. 30). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Williams is not entitled to habeas relief.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

I.    **Background and Procedural History[2]**

Mid-morning on April 26, 2013, David Del Gallo, the victim, came home to find Williams loading Del Gallo's 40-foot extension ladder into a truck parked in the street. Del Gallo's ladder had been stored inside his fenced-in yard, near the driveway. Del Gallo's yard was fully fenced except for the driveway opening. Del Gallo had "no trespassing" signs next to the driveway entrance, and an ADT alarm sign on his property.

Del Gallo confronted Williams and asked him what he was doing. Williams claimed that a certain "wallpaper guy" told him he could have the ladder, and that he (Williams) was going to sell it for scrap. Del Gallo had never seen Williams before, never heard of the "wallpaper guy" Williams referenced, and did not know of anyone nearby installing wallpaper. Del Gallo had not given anyone permission to take the ladder.

Del Gallo told Williams to put the ladder back where he found it, and Williams complied. Del Gallo then contacted the police and described Williams, Williams's truck, and the truck's license number. Police used the license number to identify Williams as the owner of the truck. Del Gallo identified Williams from a photo

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 24, Attach. 2, Ex. B (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

lineup as the man whom he caught stealing his ladder. Del Gall also identified Williams in court as the thief.

In Escambia County Circuit Court Case No. 2013-CF-2193, Williams was charged with Burglary of an Unoccupied Dwelling (Count 1), Grand Theft from a Dwelling (Count 2), and Felony Petit Theft (Count 3). (Doc. 24, Attach. 1, Ex. A at 3).[3] The morning of trial (October 17, 2013), the State *nolle prossed* the charge of Grand Theft from a Dwelling (Count 2). (Attach. 2, Ex. B at 53 (trial transcript); Attach. 1, Ex. A at 100 (judgment)). A jury convicted Williams of the remaining counts (Burglary of a Dwelling and Felony Petit Theft) as charged. (*Id.* at 28 (verdict)).

Williams's sentencing hearing was held on December 3, 2013. (Attach. 1, Ex. A at 32-77). The sentencing judge found by the preponderance of the evidence that Williams committed the burglary within three years after release from custody for a prior felony, which made Williams a "prison releasee reoffender" under Florida Statutes § 775.082(9). This in turn subjected Williams to a mandatory minimum sentence of 15 years of imprisonment for the Burglary of a Dwelling. Williams was

---

[3] Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 24). The citation refers to the electronic attachment number followed by the lettered exhibit. If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

sentenced to a concurrent term of 5 years of imprisonment for the Felony Petit Theft. (*Id*. at 92-100 (judgment and sentence)).

Williams appealed, raising three issues. (Attach. 2, Ex. C). The Florida First District Court of Appeal ("First DCA") affirmed on February 20, 2015, *per curiam* and without a written opinion. *Williams v. State*, 158 So. 3d 572 (Fla. 1st DCA 2015) (Table) (copy at Attach. 2, Ex. F).

On August 17, 2015, Williams filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (Attach. 2, Ex. G at 1-46 (original motion), 51-70 (amended motion)). The state circuit court denied relief on the merits. (Attach. 2, Ex. H at 71-270). The First DCA affirmed *per curiam* and without a written opinion. *Williams v. State*, 200 So. 3d 1271 (Fla. 1st DCA 2016) (Table) (copy at Attach. 3, Ex. K). The mandate issued October 24, 2016. (*Id*.).

On November 8, 2016, Williams filed a *pro se* petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel. (Attach. 3, Ex. L (petition), Ex. M (supplement)). The First DCA denied the petition on the merits on June 21, 2017. *Williams v. State*, 227 So. 3d 575 (Fla. 1st DCA 2017) (Table) (copy at Attach. 6, Ex. P).

On December 5, 2016, Williams filed a *pro se* successive Rule 3.850 motion, which he later supplemented. (Attach. 6, Ex. Q at 11-140 (original motion), 141-54

(supplement)). The state circuit court denied the motion on state-law procedural grounds. (Attach. 7, Ex. Q at 155-69). The First DCA affirmed *per curiam* and without a written opinion. *Williams v. State*, 240 So. 3d 636 (Fla. 1st DCA 2018) (Table) (copy at Attach. 7, Ex. T). The mandate issued March 6, 2018. (*Id.*).

Williams filed his *pro se* federal habeas petition on April 9, 2018, which he later amended. (Docs. 1, 7). Williams's amended petition raises 27 claims. (Doc. 7). The State asserts that 13 claims are procedurally defaulted and that the remaining claims do not warrant habeas relief. (Doc. 24).

## II.    Relevant Legal Standards

### A.    Exhaustion and Procedural Default

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Federal courts consider a claim procedurally defaulted if it was presented in state court and rejected on an independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 & n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

This Circuit has a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd*, 250 F.3d at 1313. First, the last state court rendering judgment must clearly and expressly state that it is relying on a state procedural rule to resolve the federal claim. *Id*. Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd*, 250 F.3d at 1313, or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually

innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Id.*

## B.     Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached

---

[4] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in

light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.</u>

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

### III.    Discussion

#### A.    Williams's Procedurally Defaulted Claims

The State asserts that 13 of Williams's 27 claims are procedurally defaulted, specifically: Grounds 5, 6, 7, 9, 12, 14, 15, 16, 17, 18, 19, 20 and 22. (Doc. 24). The State argues that Williams presented these claims to the state courts in his successive Rule 3.850 motion, and that the state court rejected them on independent and adequate state procedural grounds.

The record confirms that Williams presented Grounds 5, 6, 7, 9, 12, 14, 15, 16, 17, 18, 19, 20 and 22 of his federal habeas petition to the state circuit court in his "Successive-Motion to Vacate, Set Aside, or Correct Sentence" and supplement filed under Rule 3.850. (Doc. 7 at 22-23, 24-26, 27-28, 31-33, 38-40, 44-45, 46-47, 48-49, 50-51, 52-54, 55-56, 57-60, 62-64 (amended petition); Doc. 24, Attach. 6-7, Ex. Q at 29-40, 41-49, 49-54, 63-68, 71-78, 78-87, 87-95, 100-107, 95-100, 117-122, 122-128, 143-146, 68-71 (claims, in respective order, as they appear in Williams's successive Rule 3.850 motion and supplement)).

The state circuit court clearly and expressly imposed two independent state procedural bars. The order was titled "Order Denying with Prejudice Successive Motions [sic] for Postconviction Relief and Order Dismissing as Moot Defendant's Motion to Exceed Page Limits." (Attach. 7, Ex. Q at 155). The order stated, in relevant part:

The Court treats Defendant's successive motion and supplement as a single successive postconviction motion. After due consideration of the motions, record, and legal authority, the Court finds that Defendant's rule 3.850 motion should be denied with prejudice.

Defendant's postconviction motion is successive, and an abuse of process. Defendant has previously filed a rule 3.850 motion and received a ruling on the merits.FN1 Defendant has failed to demonstrate either an exception to the timeliness requirement, or a valid reason why the instant motion should not be deemed improperly successive and an abuse of procedure under rule 3.850. Because the motion does not meet an exception to the time filing requirements of rule 3.850, and is also facially insufficient, the motion shall be denied with prejudice pursuant to rule 3.850(f)(1), Florida Rules of Criminal Procedure.

> FN1    See Attachment 1, Order Denying "Amended Motion to Vacate, Set Aside or Correct Sentence," (without attachments), filed April 1, 2016. The mandate and opinion affirming the order denying was issued on October 24, 2016.

 (Attach. 7, Ex. Q at 155-56). The First DCA summarily affirmed. (Attach. 7, Ex. T).

This court presumes that the First DCA's rejection of Williams's claims rested on the same procedural bars imposed by the lower court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. . . . [W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar

and consider the merits.") (citation omitted); *see also Richter*, 562 U.S. at 99-100

(citing *Ylst* as an example of where the presumption of a merits adjudication is

overcome).

The state circuit court imposed two procedural bars: (1) Florida's prohibition

on successive Rule 3.850 motions that abuse the procedure, and (2) Florida's 2-year

statute of limitations for filing a Rule 3.850 motion. The state court's imposition of

Florida's bar on successive Rule 3.850 motions that abuse the procedure is adequate

to support its judgment. Rule 3.850 provides:

> [A] court may dismiss a second or successive motion if the court finds
> that it fails to allege new or different grounds for relief and the prior
> determination was on the merits or, if new and different grounds are
> alleged, the judge finds that the failure of the defendant or the attorney
> to assert those grounds in a prior motion constituted an abuse of the
> procedure or there was no good cause for the failure of the defendant
> or defendant's counsel to have asserted those grounds in a prior motion.
> When a motion is dismissed under this subdivision, a copy of that
> portion of the files and records necessary to support the court's ruling
> shall accompany the order denying the motion.

Fla. R. Crim. P. 3.850(h)(2) (2016). As required by the Rule, the state circuit court

attached to its order a copy of the final order entered in Williams's first Rule 3.850

proceeding. (Attach. 7, Ex. Q at 157-70).

Williams argues that the state court's imposition of this procedural bar was

unfair, and that his procedural default for successiveness and abusing the Rule 3.850

procedure should be excused, because he was unable to amend his original motion

in the first Rule 3.850 proceeding within the 60-day deadline due to a prison transfer and his ignorance of court procedure (the ability to seek an extension of time). (Doc. 30 at 4-5). Williams's allegations are conclusively refuted by the record. Williams *did* file a timely amended Rule 3.850 motion in his first postconviction proceeding. (Attach. 2, Ex. G at 1-46 (original motion), 51-70 (amended motion)). The state court denied relief on the merits. (Attach. 2, Ex. H at 71-270). Williams's successive Rule 3.850 motion raised ineffective assistance of trial counsel claims that could have been raised in his first Rule 3.850 proceeding.[5]

Williams's procedural default of the 13 claims—raised in his successive motion that abused the Rule 3.850 procedure—bars federal habeas review of those issues. *See Jennings v. McDonough*, 490 F.3d 1230, 1247-48 (11th Cir. 2007) (holding that state court's conclusion that petitioner's claims were procedurally barred by Florida's rule against successive Rule 3.850 motions was a state law ground independent of the federal question and adequate to support the state court's judgment, thereby rendering the claims procedurally defaulted on habeas review); *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005)

---

[5] The state court's order striking and requiring amendment of Williams's original motion in his first Rule 3.850 proceeding explicitly warned Williams that his amended motion must "encompass[ ] all of the postconviction relief matters which Defendant intends to raise via Rule 3.850," and ordered that Williams file "a single amended motion, which is to contain all of his postconviction claims." (Attach. 2, Ex. G at 48, 49).

(recognizing that the Eleventh Circuit "already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law") (citing *Whiddon v. Dugger*, 894 F.2d 1266, 1267-68 (11th Cir. 1990)).

Williams also argues that the state court's imposition of the alternative procedural bar—untimeliness—is inadequate to support its judgment because his successive motion was filed within the two-year limitations period provided in Rule 3.850(b). (Doc. 30 at 4-6). This court need not review the adequacy of that alternative procedural bar, because the abuse-of-procedure bar was adequate, in itself, to support the state court's judgment.

Williams's procedural default of Grounds 5, 6, 7, 9, 12, 14, 15, 16, 17, 18, 19, 20 and 22 bars federal habeas review of those claims.

### B.    Williams's Remaining Claims

### Ground 1    "Failure to Instruct on Burglary of a [sic] Unoccupied Structure as a lesser included offense, is Fundamental Error." (Doc. 7 at 9).

Williams claims that the trial court committed fundamental error by failing to instruct the jury on the lesser included offense of Burglary of an Unoccupied Structure. (Doc. 7 at 9). The parties agree that Williams presented the claim of fundamental error in his direct appeal. (Doc. 7 at 9; Doc. 24 at 14). The State asserts

that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 14-16).

### A.    Clearly Established Federal Law

"State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." *Jones v. Kemp*, 794 F.2d 1536, 1540 (11th Cir. 1986) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

### B.    State Court's Decision

At trial, defense counsel agreed that the jury instructions for Count 1 should include only the charged offense of Burglary of a Dwelling, and the lesser included offense of Trespass. (Attach. 2, Ex. B at 108-110 (charge conference); *Id*. at 194 (discussion of verdict form)). Counsel noted that he believed that would benefit Williams. (*Id*. at 110) ("I actually think it works to my advantage."). Defense counsel approved the instructions both before and after the jury was charged. (*Id*. at 108-118, 194).

On direct appeal, Williams claimed that the trial court's failure to instruct on Burglary of a Structure as a necessarily lesser included offense constituted fundamental error. (Attach. 2, Ex. C at 7-12). Williams conceded that the instruction error was not preserved for appeal, but argued that relief was warranted under Florida's "fundamental error" standard. (*Id*. at 7-10). Williams alternatively argued

Page 16 of 75

that trial counsel was ineffective for failing to request the instruction. (*Id*. at 10-11). The First DCA summarily affirmed Williams's conviction without explanation. (Attach. 2, Ex. F).

### C.    Williams's Claim Does Not Warrant Habeas Relief

The State asserts that the First DCA rejected Williams's instruction error claim on the theory that the unpreserved error (whether affirmatively waived or merely unobjected to) did not constitute "fundamental error" under Florida law. (Doc. 24 at 14-16). "Under Florida law, if a defendant fails to object to a jury instruction at trial, the instruction may be challenged on appeal only if it amounts to 'fundamental error'" as defined by state law. *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1296 (11th Cir. 2017) (quoting *State v. Delva*, 575 So. 2d 643, 644 (Fla. 1991) ("Instructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred.")). "[U]nless the unpreserved jury instruction error . . . is fundamental error, the Florida appellate courts w[ill] not. . . grant[ ] relief." *Pinkney* at 1296-97 (citing Florida cases).

Florida courts define fundamental error as "error that reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Kilgore v. State*, 688 So. 2d 895, 898 (Fla. 1996) (alteration and quotation marks omitted). The Florida Supreme

Court has explained that the "doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." *Smith v. State*, 521 So.2d 106, 108 (Fla. 1988).

The undersigned agrees with the State's interpretation of the First DCA's decision. The First DCA rejected Williams's claim based on the instruction error not being fundamental error.[6] "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." *Pinkney*, 876 F.3d at 1299. "[I]t is not a federal court's role to examine the propriety of a state court's determination of state law. *Id.*; *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (stating that the views of state appellate courts with respect to state law "are binding on the federal courts"). Williams's contention in this court—that the trial court's failure to give the instruction constituted "fundamental error"—is an issue of state law that provides no basis for federal habeas relief.

---

[6] Williams did not claim that the instruction error violated his constitutional rights. (Attach. 2, Ex. C at 7-11).

Williams's federal habeas petition adds the conclusory statement that the error also violated his constitutional right to a fair trial. That argument fares no better. Even giving Williams the benefit of *de novo* review under the due process standard, the trial court's failure to instruct on Burglary of an Unoccupied Structure did not rise to the level of fundamental unfairness, because the jury found, beyond a reasonable doubt, that Williams burglarized Del Gallo's dwelling.[7] Under Florida law, a jury is permitted to convict on a lesser included offense "only if it decides that the main accusation has not been proved beyond a reasonable doubt." *Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006). The jury in Williams's trial concluded that the evidence against him supported his conviction for Burglary of an Unoccupied Dwelling; therefore, even if the lesser offense instruction had been given, the jury would not have been permitted to convict Williams of the lesser included offense. *Id*. Williams has not demonstrated any prejudice or fundamental unfairness from the absence of an instruction on Burglary of an Unoccupied Structure.

For all of the foregoing reasons, Williams is not entitled to habeas relief on Ground 1.

---

[7] There is no dispute that the trial court properly instructed the jury on the elements of Burglary of an Unoccupied Dwelling, and on the burden of proof. (Attach. 1, Ex. A at 17-27; *see also* Fla. Std. Jury Instr. (Crim.) 13.1).

**<u>Ground 2</u>    "<u>The State produced legally insufficient evidence that the dwelling allegedly burglarized was unoccupied.</u>" <u>(Doc. 7 at 11).</u>**

Williams claims that there is insufficient evidence to support his conviction for Burglary of an Unoccupied Dwelling, because the State failed to prove "that the wallpaper man was not there, that the driveway was unoccupied, . . . for there very well could have been a contractor, wallpaper man in the driveway." (Doc. 7 at 11).

The parties agree that Williams exhausted this claim by presenting it in his direct appeal. (Doc. 7 at 11; Doc. 24 at 17). The State asserts that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 17-19).

### A.    Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. *See Jackson*, 443 U.S. at 315. "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 324, n.16).

The federal standard finds evidence sufficient to support a conviction "if, 'after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson*, 566 U.S. at 654 (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). By confining the court's review to that legal question, *Jackson*'s limited, deferential standard ensures that the court "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, ___ U.S. ___, 136 S. Ct. 709, 715 (2016) (quoting *Jackson*, 443 U.S. at 319); *see also Johnson*, 566 U.S. at 655 (explaining that *Jackson*'s deferential standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring that jurors 'draw reasonable inferences from basic facts to ultimate facts.'") (quoting *Jackson*, 443 U.S. at 319).

## B.    Section 2254 Review Of State Court's Decision

The First DCA summarily affirmed Williams's conviction without explanation. (Attach. 2, Ex. F). This summary decision is an "adjudication on the merits" of Williams's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *id*. at 100 ("This Court now holds and

reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

The Court in *Richter* instructed that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under § 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

In Florida, the crime of Burglary of a Dwelling has two elements: (1) the defendant entered the victim's dwelling; and (2) at the time the defendant entered the dwelling, he intended to commit an offense therein (here, theft). *See* Fla. Stat. § 810.02(1)(b); *see also* Doc. 24, Attach. 1, Ex. A at 18 (jury instructions). The status of the dwelling as occupied, or unoccupied, is not an element of the offense and is not a fact the State is required to prove; nor does the status of the dwelling as occupied or unoccupied affect the severity of the offense. In Florida, Burglary of a Dwelling is a second degree felony regardless of whether the dwelling is occupied or not. *See* Fla. Stat. § 810.02(3).

Based on the State's evidence, as described in the Background section above, a fairminded jurist could agree with the First DCA's conclusion that, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of Burglary of a Dwelling beyond a reasonable doubt, namely, that: (1) Williams entered Del Gallo's dwelling and (2) at the time of entry, Williams intended to commit theft within the dwelling. Williams is not entitled to habeas relief on Ground 2.

### Ground 3    "PRR sentence has violated Petitioner['s] Sixth Amendment to the U.S. Constitution." (Doc. 7 at 13).

Williams claims that his sentence as a prison releasee reoffender violates the Constitution, because two predicate facts were not charged in the Information or found by a jury: (1) his prior felony conviction, and (2) his release from prison within three years of his new offense. (Doc. 7 at 13). The parties agree that Williams exhausted this claim by presenting it in his direct appeal. (Doc. 7 at 13; Doc. 24 at 20). The State asserts that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 20-23).

### A.    Clearly Established Federal Law

Under *Apprendi v. New Jersey* and later cases, a defendant has the right to trial by jury on any fact, other than "the fact of a prior conviction," that would increase the minimum or maximum sentence; and second, the right to have any such

fact established on proof beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see, e.g., Alleyne v. United States*, 570 U.S. 99, 116 (2013); *United States v. Booker*, 543 U.S. 220, 231 (2005); *Blakely v. Washington*, 542 U.S. 296, 303-05 (2004).

### B.    Section 2254 Review Of State Court's Decision

The First DCA summarily affirmed Williams's conviction without explanation. (Attach. 2, Ex. F). This summary decision is an "adjudication on the merits" of Williams's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100.

The First DCA reasonably rejected Williams's argument that he had the right to have the fact of his prior felony conviction found by a jury. *Apprendi* clearly creates an exception for "the fact of a prior conviction." 530 U.S. at 490. *See Almendarez-Torres v. United States*, 523 U.S. 224, 226-37 (1998) (holding that prior convictions are not an "element" that must be found by a jury.); *see also Mendelson v. Fla. Dep't of Corr.*, No. 19-10130-J, 2019 WL 3206630, at *2 (11th Cir. May 30, 2019) (unpublished opinion) (denying a certificate of appealability on Florida prisoner's claim that his sentencing as a PRR violated his constitutional rights under *Apprendi* because the fact that he previously had been convicted of a felony was not found by a jury; the claim was foreclosed by *Almendarez-Torres*, *supra*,). Therefore,

the First DCA's rejection of this aspect of Williams's claim is consistent with clearly established federal law.

The remaining question is whether the First DCA reasonably applied *Apprendi* when it rejected Williams's argument that he was entitled to have the jury decide that he was released from prison within three years of his current offense. This District Court addressed an identical claim in *Myles v. Sec'y, Dep't of Corr.*, No. 4:17cv326-RH/GRJ, 2019 WL 968880 (N.D. Fla. Feb. 28, 2019). The District Judge in *Myles*, summarized the three relevant issues on habeas review:

> [F]irst, whether the *Apprendi* exception for "the fact of a prior conviction" extends to the date of the current offense of conviction and the date of the defendant's release from custody on the prior conviction; second, if the answer is no, whether the answer is so clear that all reasonable jurists would agree, thus allowing relief under the Antiterrorism and Effective Death Penalty Act's deferential standard of review; and third, in any event, whether any error, even if beyond fair debate, made no difference, thus precluding relief.

*Myles*, 2019 WL 968880 at *1. Applying this analysis to Williams's claim, he is not entitled to habeas relief.

The District Court recognized in *Myles*, that Florida's PRR statute requires a determination of "both the date of the new offense of conviction and the date on which the defendant was released from custody on a prior conviction." *Id*. at *2. The court in *Myles* found it "unlikely" that either issue comes within *Apprendi*'s narrow prior-conviction exception, because that exception, by its plain terms, applies only

to "the fact of a prior conviction." *Myles*, 2019 WL 968880 at *1-2 (quoting *Apprendi*, 530 U.S. at 490). That, however, does not end the analysis.

To overcome § 2254(d)(1)'s deferential standard, a state prisoner must show that "no fairminded jurist" could agree with the state court's rejection of his claim. The District Court concluded in *Myles* that it is "fairly debatable" whether the *date of release from the prior conviction* comes within *Apprendi*'s prior-conviction exception, and that such fair debate precludes habeas relief under § 2254(d). *Myles*, 2019 WL 968880 at *3 (expressing doubt that the release date comes within *Apprendi*'s prior-conviction exception, but recognizing that Florida state courts have interpreted *Apprendi*'s exception to include the date of release from the prior conviction). The undersigned agrees that this fair debate precludes habeas relief on Williams's claim that he was entitled to a jury determination of the date he was released from his prior conviction.[8] *See, e.g., Davis v. Ayala*, 576 U.S. 257, 269-70

---

[8] It also bears noting that *Apprendi* might not have been violated anyway, even if the prior-conviction exception did not apply. At the sentencing hearing, Williams did not object when the State proffered a log from the Department of Corrections establishing his release date from his prior conviction. (*See* Doc. 24, Attach. 1, Ex. A at 40, 50-54 (transcript of sentencing hearing); Ex. A at 133-148 (State's sentencing Exhibit 1)). If not an admission of the release date, this surely was close. *See Booker*, 543 U.S. at 244 ("[W]e reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict *must be admitted by the defendant* or proved to a jury beyond a reasonable doubt.") (emphasis added).

(2015) ("[A] state-court decision is not unreasonable if fairminded jurists could disagree on its correctness.") (internal quotation marks and citations omitted).

The court in *Myles* reached the opposite conclusion concerning whether it is "fairly debatable" that *the date of the new offense of conviction* falls within *Apprendi*'s prior-conviction exception. *Myles*, 2019 WL 968880 at *3. The District Judge concluded:

> A defendant has the right to a jury trial on proof beyond a reasonable doubt on a relevant date of an offense of conviction—a date that affects the minimum or maximum sentence under the prison-releasee-reoffender statute. Holding otherwise may be contrary to, or involve an unreasonable application of, clearly established federal law as determined by the Supreme Court in *Apprendi* and later cases.

*Id.* at *3. That said, the District Court found that Mr. Myles still was not entitled to habeas relief, because there was no *Apprendi* violation in his case. Mr. Myles's charging document charged him with committing the offense on or about a specific date, and the jury verdict necessarily determined that he committed the offense on or reasonably near that date. *Myles*, 2019 WL 968880 at *3. "When a fact at issue is determined by a jury on proof beyond a reasonable doubt, there is no *Apprendi* violation." *Myles*, 2019 WL 968880 at *3.

The same is true here. Even assuming that Williams satisfies § 2254(d)(1)'s standard concerning his claim that he was entitled to have a jury determine the date of his new offense of conviction, he is not entitled to habeas relief, because his claim

fails on *de novo* review. Williams was charged with burglarizing Del Gallo's dwelling on April 26, 2013. (Doc. 24, Attach. 1, Ex. A at 3). Del Gallo testified that the burglary occurred on that date. (Attach. 2, Ex. B at 69). The jury verdict necessarily determined that Williams committed the burglary on April 26, 2013. There was no *Apprendi* violation.

Finally, even if this court found error under *Apprendi*, Williams cannot meet the *Brecht* standard for relief on the alleged error. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (holding that the appropriate standard for harmlessness of a nonstructural constitutional error on collateral review is whether the error "had substantial and injurious effect or influence" in determining the outcome.). The record establishes without dispute that Williams committed the new offense on April 26, 2013. The Department of Corrections' log establishes without dispute that Williams was released from custody on his prior conviction on June 2, 2011. Whether tried to a judge or jury, and whether on a preponderance or a reasonable-doubt standard, the result would be the same. Thus, it is clear beyond any reasonable doubt that any *Apprendi* error made no difference.

For all of the foregoing reasons, Williams is not entitled to habeas relief on Ground 3.

**<u>Ground 4</u>** **<u>"Defense counsel was ineffective where he failed to file a motion for judgement [sic] of acquital [sic] at the close of all evidence." (Doc. 7 at 15).</u>**

Williams claims that trial counsel was ineffective for failing to move to acquit him of the burglary charge, on the ground that the State's evidence was purely circumstantial on the elements of whether he entered Del Gallo's property intending to commit a crime, and the evidence failed to exclude every reasonable hypothesis of innocence. (Doc. 7 at 15). The parties agree that Williams presented this ineffective assistance claim to the state courts in his first Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Williams briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 7 at 16-17; Doc. 24 at 23). The State argues that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 24-26).

### A.    Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in his first Rule 3.850 proceeding as Ground One of his amended motion. (Doc. 24, Attach. 2, Ex. G at 56-59). The state circuit court summarily denied relief. The state court summarized the charge and Williams's defense:

The charges in the instant case arose from the alleged theft of a ladder from a residence. Although he did not testify, Defendant's theory at trial was that a "wallpaper man" had been in the driveway of the home from which the ladder was taken, and told Defendant that he could take the ladder, which he asserts had been placed beside the road as if it were trash.

(Attach. 2, Ex. H at 71-72). After summarizing Williams's seven claims for postconviction relief, the state court identified the governing legal standard as the *Strickland* standard, and denied relief on this claim as follows:

In Defendant's first claim, Defendant alleges that his counsel was ineffective for failing to make a proper motion for judgment of acquittal at the close of the evidence. He argues that the State's case was based on circumstantial evidence, and that the evidence did not "prove [his] guilt beyond the exclusion of every reasonable hypothesis of innocence." He concludes that "the prosecution failed to present more than evidence consistent with his guilt but, inconsistent with his reasonable hypothesis of innocence which prejudice[d] the Movant where had defense counsel filed the motion [for] judgment of acquittal it would have been granted resulting in acquittal."

A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. The state is not required to rebut conclusively every possible variation of events, but "only to introduce competent evidence which is inconsistent with the defendant's theory of events." State v. Law, 559 So. 2d 187, 189 (Fla. 1990). In addition, "A trial court should rarely, if ever, grant a motion for judgment of acquittal based on the state's failure to prove mental intent. Whether one had intent is generally a question given to a jury, for reasonable men may differ in determining intent when taking into consideration the surrounding circumstances." Knight v. State, 107 So. 3d 449, 464 (Fla. 5th DCA 2013). (internal citations and quotations omitted). Defendant argues that the "state's evidence is not inconsistent with the Movant's theory of innocence, for example the Movant's recount of events is suggestive that someone else

could have moved the ladder to the road. The business had an ungated and open driveway, this open access would allow anyone to walk up the driveway and move the ladder outside the property line next to the roadway. . . . the prosecution offered no evidence to refute that the Wallpaper Man in the black truck placed the ladder beside the road."

First, as previously noted, Defendant did not testify at trial. Therefore, the only evidence about the "wallpaper man" came from other witness testimony about statements Defendant made at the scene. Furthermore, as Defendant acknowledges, the State presented **<u>direct</u>** evidence that Defendant was seen by the victim, David Del Gallo, in the street adjacent to the Del Gallo residence, attempting to load Mr. Del Gallo's ladder into his truck. Consequently, the State's case cannot be characterized as purely circumstantial.

Mr. Del Gallo testified that the ladder had been inside the fence near where he parked his vehicle when he left his residence that morning. He also stated that the ladder was not trash and that it was not by the street. He also stated that while the ladder was "quite dirty," it was not broken. Having considered the totality of the evidence presented at trial, the Court finds that Defendant has failed to demonstrate that counsel was deficient or that he was prejudiced by counsel's failure to move for judgment of acquittal at the conclusion of the evidence. He is not entitled to relief on the basis of his first claim.

(Attach. 2, Ex. H at 73-75) (alterations in original) (footnotes citing to trial transcript omitted). The First DCA summarily affirmed. (Attach. 3, Ex. K).

The First DCA's summary affirmance is an "adjudication on the merits" of Williams's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same

reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

The state court's rejection of Williams's claim was not contrary to clearly established federal law, because the state court utilized the *Strickland* standard. The state court's rejection of Williams's claim was not an unreasonable application of the *Strickland* standard, because there is no reasonable probability Williams's proposed motion to acquit would have succeeded. *See Richter*, 562 U.S. at 112 (holding that to establish prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial").

Del Gallo's testimony, if credited by the jury, provided ample evidence from which a rational jury could find that Williams took Del Gallo's ladder from inside Del Gallo's dwelling with the intent to steal it. (Attach. 2, Ex. B at 69-90 (Del Gallo's testimony)). Trial counsel, therefore, was not ineffective for failing to raise a meritless motion to acquit Williams. *Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Freeman v. Attorney Gen., Fla.*, 536

Page 34 of 75

F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Williams is not entitled to habeas relief on Ground 4.

**Ground 8**    **"Defense counsel was ineffective where he failed to seek the lesser included offense of Burglary Unoccupied Structure, one step removed from the charged offense of Burglary Unoccupied Dwelling violating Petitioner's 5th, 6th, and 14th Amendments to the U.S. Constitution, depriving Petitioner to [sic] his constitutional rights to a fair trial." (Doc. 7 at 29).**

Williams claims that trial counsel was ineffective for failing to request an instruction on the lesser included offense of Burglary of a Structure. Williams alleges that there was sufficient evidence to support that instruction, because evidence discovered before and during trial established that the ladder "was laying [sic] on the ungated-open concrete driveway apron" and "this particular structure, dwelling had a lesser expectation of privacy because it was also a business." (Doc. 7 at 29-30).

The parties agree that Williams presented this ineffective assistance claim to the state courts in his direct appeal and in his successive Rule 3.850 proceeding. (Doc. 7 at 30; Doc. 24 at 43-46). The State asserts that even assuming to Williams's benefit that the state court on direct appeal considered the merits on Williams's

claim, he is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 44-46).

### A.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard set forth above.

### B.      Section 2254 Review of State Court's Decision

The First DCA summarily affirmed Williams's conviction without explanation. (Attach. 2, Ex. F). This summary decision is an "adjudication on the merits" of Williams's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Williams's burden under § 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

The First DCA reasonably could have denied relief based on Williams's failure to satisfy *Strickland*'s prejudice standard. There is no reasonable probability the result of Williams's trial would have been different had counsel requested an instruction on Burglary of a Structure, because the jury concluded that the evidence supported Williams's conviction for the charged offense of Burglary of a Dwelling. The jury could not have convicted Williams of any lesser included offense on the Burglary charge. *See Sanders*, 946 So. 2d at 958 (holding that in Florida, a jury is permitted to convict on a lesser included offense "only if it decides that the main accusation has not been proved beyond a reasonable doubt.").

Page 36 of 75

The state court's rejection of Williams's claim was not contrary to, and did not involve an unreasonable application of the *Strickland* standard. Williams is not entitled to habeas relief on Ground 8.

**Ground 10**    **"Defense counsel was ineffective for failing to file a motion in limine to suppress photographs of Petitioner's truck surrounded by law enforcement and there [sic] cruisers, where any probative value the photos may have had were far outweighed by prejudice, violating Petitioner's 5th, 6th, and 14th Amendments to the U.S. Constitution." (Doc. 7 at 34).**

Williams claims that trial counsel was ineffective for failing to move to suppress photographs of Williams's truck that were taken when he was arrested. (Doc. 7 at 34-35). Williams argues that the photographs "were neither probative nor relevant" and that they had the "propensity to confuse and misle[a]d the jury into finding the Petitioner guilty" because law enforcement officers and their patrol vehicles appear in one of the photographs. (*Id*. at 34). Williams claims that had counsel objected to the photographs, they would have been excluded under Florida's Evidence Code, and the jury would have acquitted him. (*Id*.).

The parties agree that Williams presented this ineffective assistance claim to the state courts in his first Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Williams briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 7 at 35; Doc. 24 at 51). The State argues that Williams is not

entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 52-54).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard set forth above.

### B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in his first Rule 3.850 proceeding as Ground Five of his amended motion. (Doc. 24, Attach. 2, Ex. G at 63-65). Williams claimed that the photographs were inadmissible under Section 90.403 of the Florida Evidence Code and state court decisions interpreting and applying that rule of evidence. (*Id.* at 63-64). The state circuit court identified *Strickland* as the governing legal standard, and denied relief for these reasons:

> In his fifth claim, Defendant argues that his counsel was ineffective for failing to file a motion to exclude the photographs of his vehicle surrounded by law enforcement at the time of his arrest, because the prejudice from the photographs outweighed any probative value. He asserts that the prosecution used these photographs to prove that his truck was on Mr. Del Gallo's property, showing that "Movant had in fact entered and remained upon Mr. Del Galo's property contrary to the defense theory." Had counsel moved to exclude the photographs, Defendant argues, the motion would have been granted, and the jury would have returned a not guilty verdict. Defendant also claims that pictures of the truck surrounded by law enforcement were more prejudicial than probative because they gave the impression that he was violent, that he attempted to flee, and that he was in possession of some sort of contraband.

Defendant has failed to demonstrate that his counsel was deficient or that he was prejudiced. The Court has reviewed the photographs, and concludes that the pictures were relevant, in that they were used to establish that the vehicle in which Defendant was apprehended was the vehicle into which Mr. Del Gallo had seen Defendant attempting to load the ladder. Second, the photographs of the vehicle introduced at trial are not inflammatory in the manner in which Defendant suggests, and the Court does not find that counsel was deficient for failing to move to exclude them. They do not suggest either an overwhelming police response or that Defendant had fled from the police or was in possession of contraband. Finally, Defendant cannot show that, had these photographs not been admitted, a reasonable probability of a different outcome at his trial exists. He is not entitled to relief on this basis.

(Attach. 2, Ex. H at 79) (footnotes omitted). The order attached copies of the photographs at issue. (Attach. 3, Ex. H at 266-70). The First DCA summarily affirmed. (Attach. 3, Ex. K).

The First DCA's summary affirmance is an "adjudication on the merits" of Williams's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

Where, as here, the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-

guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted). Because this court will not "second guess" the Florida state courts' conclusion that the photographs were admissible under Florida's Evidence Code, Williams cannot demonstrate that his counsel was ineffective for failing to object to their admission. *See id.* "It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019); *Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that habeas petitioner could not possibly have suffered *Strickland* prejudice where the objection that was not made would have been futile); *Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief").

Williams is not entitled to habeas relief on Ground 10.

**Ground 11** **"The prosecution acted in bad faith a[nd] violated Giglio when he knowingly elicited false testimony from David Del Gallo and used this evidence in an attempt to prove intent bolstering his case against the Petitioner, violating Petitioner's 5th, 6th, and 14th Amendments to the United States Constitution." (Doc. 7 at 36).**

Williams claims that the prosecutor knowingly elicited false testimony from Del Gallo when introducing photographs of Williams's truck. Williams's claim is based on this exchange:

Q. (By Mr. Swedlaw [Prosecutor])  Mr. Del Gallo, take a look at these three—I'm sorry, four and tell me if you recognize those?

A. [Del Gallo]  It appears to be the truck that was—the ladder was trying to be loaded into.

Q.  And are those a fair and accurate representation of the truck on your property?

A.  Yes.

MR. SWEDLAW:  Your Honor, the state would offer State's Composite Exhibit 2A through 2D into evidence.

THE COURT:  It will be admitted.

. . . .

Q. (By Mr. Swedlaw)  And so you stated, this is as far as you can tell, the truck that you saw at your property on April 26, 2013?

A.  Yes.

Q.  And it may be tough to remember, but is this the wheel that you observed the defendant trying to weigh down the ladder with?

A. It probably is the wheel.

(Attach. 2, Ex. B at 87-88). Williams claims that the photographs did not depict his truck on Del Gallo's property, but rather in a nearby church parking lot where he was arrested a short time after the burglary. (Doc. 7 at 36-37). Williams claims that the prosecutor's phrasing amounted to a knowing presentation of false testimony that was material to the issue of intent.

The parties agree that Williams presented this claim to the state courts in his first Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Williams briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 7 at 37; Doc. 24 at 54-55). The State argues that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 55-57).

### A.   Clearly Established Federal Law

"In *Brady v. Maryland*, the Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1319 (11th Cir. 2013) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "*Giglio* error, a species of *Brady* error, occurs when 'the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury.'" *Davis v. Terry*,

465 F.3d 1249, 1253 (11th Cir. 2006) (quoting *Ventura v. Attorney Gen., Fla.*, 419 F.3d 1269, 1276-77 (11th Cir. 2005)); *see also Hammond v. Hall*, 586 F.3d 1289, 1306-1307 (11th Cir. 2009) ("A *Giglio* claim involves an aggravated type of *Brady* violation in which the suppression of evidence enabled the prosecutor to put before the jury what he knew was false or misleading testimony, . . . or allowed the prosecutor himself to make a false statement to the jury.") (citations omitted).

To establish a *Giglio* violation, a petitioner must establish that the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony and that the falsehood was material. *Tompkins v. Moore*, 193 F.3d 1327, 1339 (11th Cir. 1999). The standard for materiality under *Giglio* is whether there is a reasonable likelihood that the falsehood could have affected the jury's verdict. *United States v. Alzate*, 47 F.3d 1103, 1110-11 (11th Cir. 1995).

### B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in his first Rule 3.850 proceeding as Ground Four of his amended motion. (Attach. 2, Ex. G at 62-63). The state circuit court denied relief as follows:

> In his fourth claim, Defendant argues that the prosecution committed a Giglio violation by knowingly eliciting false testimony from Mr. Del Gallo. He argues that, while introducing photographs of Defendant's truck, the prosecutor asked Mr. Del Gallo if that was a "fair and accurate photo of defendant's truck on your property?" to which Mr. Del Gallo responded that it was. Defendant argues that the photographs did not show his truck on Mr. Del Gallo's property but

were rather taken during Defendant's arrest behind a church nearby. Defendant argues that the State knew this testimony was false, that this testimony was material, and that had it not been admitted, the jury would have returned a not guilty verdict on the charge of burglary.

Defendant's claim is refuted by the record. The following exchange occurred during Mr. Del Gallo's testimony:

Q. (By State) – Mr. Del Gallo, take a look these three – I'm sorry, four [pictures] and tell me if you recognize those?
A. It appears to be the truck that was – the ladder was trying to be loaded into.
Q. And are those a fair and accurate representation of the truck on your property?
A. Yes.
. . . .
Q. And so you stated, this is as far as you can tell, the truck that you saw at your property on April 26, 2013?
A. Yes.

It appears to the Court that the questions and answers simply indicated that the truck depicted in the photographs was the truck that Mr. Del Gallo had seen earlier at his property. It was made clear from Mr. Del Gallo's testimony that he had first observed Defendant's truck "out in the street." In addition, Officer Ronald Boutin testified that neither he nor Mr. Del Gallo had seen Defendant walk onto the property. Based on the foregoing, the Court concludes that no Giglio violation occurred, as the testimony presented was not false. Defendant is not entitled to relief on the basis of his fourth claim.

(Attach. 2, Ex. H at 77-79 (alterations in original) (footnotes omitted). The First

DCA summarily affirmed. (Attach. 3, Ex. K).

The First DCA's summary affirmance is an "adjudication on the merits" of

Williams's claim, and is reviewed under § 2254(d)'s deferential standard. *See*

*Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

Fairminded jurists could concur in the state court's conclusion that there was no *Giglio* violation. The State never claimed that Williams's truck was on Del Gallo's property. (Attach. 2, Ex. B at 70 (Del Gallo's testimony that the truck was "out in the street"); Ex. B at 149 (prosecutor's closing argument that "no one actually saw Mr. Williams go into the property and take the ladder")). The phrasing of the prosecutor's question occurred when the prosecutor was showing Del Gallo photographs of Williams's truck and asking Del Gallo to *identify the truck*, not the location where the truck was photographed. (Attach. 2, Ex. B at 87-88). The prosecutor's use of the phrase "on your property" (Attach. 2, Ex. B at 87) was a slip of the tongue that the prosecutor immediately corrected in his very next question: "And so you stated, this is, as far as you can tell, the truck that you saw *at* your property on April 26, 2013?" Del Gallo responded, "Yes." (*Id*. at 88) (emphasis added).

Defense counsel immediately confirmed, in his first two questions on cross-examination:

> Q.  "When you arrived home that morning, Mr. Williams was not parked in your driveway; is that correct?"

A. [Del Gallo]  "That's correct."

Q.  Okay. He was right in front of your driveway a little to the left or the right, correct?

A.  Correct.

(*Id*. at 90).

"Because it is not clear that the [state court] erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision," *Bobby v. Dixon*, 565 U.S. 23, 24 (2011), Williams is not entitled to habeas relief on Ground 11.

> **Ground 13   <u>"Defense counsel rendered ineffective assistance for failing to object to the state[']s improper comments, misstatements of the law and use of false evidence, misleading the jury rendering the trial unreliable violating Petitioner's 5th, 6th and 14th Amendments to a fair trial, due process of law under the United States Constitution." (Doc. 7 at 41).</u>**

Williams claims that trial counsel was ineffective for failing to object when the prosecutor asked Del Gallo if he knew a "wallpaper guy" named "Jay." The question was asked in this context:

Q. [Prosecutor]  Did you say anything to him [Williams]?

A.  [Del Gallo]  Well, yeah. I was able to pull in the driveway because he wasn't totally blocking the driveway. And when I parked the vehicle, got out and asked him what he was doing to see if by chance, he was somebody that worked for us or worked for one of our people or see if there was some sort of a relationship there.

Q.  And what did he say?

A.  He told me, he was getting the ladder. That a wallpaper person, I don't recall that person's name, told him about the ladder and that he could have it.

Q.  So a wallpaper guy told him that he was allowed to take your ladder?

A.  That's correct.

Q.  Do you—Do you know a wallpaper guy?

A.  Well, I know a lot of wallpaper guys being in the business but I didn't know that wallpaper guy or know anybody in our neighbor [sic] was doing any wallpaper of any sort so it was kind of strange.

Q.  Was Jay the wallpaper guy?

A.  That could be the name. I don't really recall.

Q.  Okay. Do you know a Jay, the wallpaper guy?

A.  I don't.

Q.  Did you give anyone permission to take the ladder?

A.  No, sir.

Q.  Not Jay, the wallpaper guy?

A.  Not anybody.

Q.  Not anybody, okay, So did you say anything else to him when he offered that explanation?

A.  Well, I told him that, again, I didn't know Jay, the wallpaper guy, if that was the name and that it was kind of a [sic] strange for a wallpaper person to know about or to use a 40-foot extension ladder. Most wallpaper's done inside of a home and not outside. So he went on to

say that he was going to scrap the ladder. So I asked him to, please, put my ladder back where he found it.

(Attach. 2, Ex. B at 70-72).

Williams claims that trial counsel should have objected on the ground that there was no evidence of a wallpaper guy named Jay, and that "this misleading question and answer resulted in a creation of false evidence and information." (Doc. 7 at 41). Williams also faults counsel for failing to object to the prosecutor's closing argument that characterized Williams's statements to Del Gallo as lies. (*Id*. at 42).

The parties agree that Williams presented this claim to the state courts in his first Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Williams briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 7 at 43; Doc. 24 at 65). The State argues that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 65-67).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard set forth above.

### B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in his first Rule 3.850 proceeding as Ground Six of his amended motion. (Doc. 24, Attach. 2, Ex. G at 66-

69). The state circuit court identified *Strickland* as the governing legal standard, and

denied relief for these reasons:

> In his sixth claim, Defendant alleges that his counsel was ineffective for failing to object to the prosecution's "misleading question and use of fabricated evidence," and to object to the prosecution's improper comment that Defendant was a "liar."

> As to the "misleading question and use of fabricated evidence," Defendant argues that the prosecution asked Mr. Del Gallo if he knew a "Jay the Wallpaper Guy," and Mr. Del Gallo responded that he did not. Defendant insists, however, that he never said the wallpaper person's name was Jay, and that counsel was deficient for failing to challenge this "improper question and misleading testimony." Defendant asserts, "Counsel was deficient where he failed to challenge this improper question and misleading testimony, the prejudice is clear, had it not been for this false evidence, the prosecution would have been unable to prove the element of intent, which would have resulted in an acquittal of the alleged offenses."

> As previously noted, Defendant did not testify, therefore, any testimony about the wallpaper person came through other witnesses. Mr. Del Gallo testified that Defendant told him at the scene that a wallpaper person told him he could have the ladder. The prosecution asked, "Was Jay the wallpaper guy?" Mr. Del Gallo responded, "That could be the name. I don't really recall." He went on to say that he did not know a wallpaper person named Jay, nor did he give anyone permission to take his ladder. Whether "Jay" was the name given by Defendant or not, it is clear from the testimony that Mr. Del Gallo did not remember the name given by Defendant. It is equally clear from the testimony that he had not given permission to anyone to remove his ladder from his premises. Consequently, the Court does not find that counsel performed deficiently in failing to challenge this testimony, nor does the Court conclude that Defendant was prejudiced by his failure to do so.

> As to the second portion of this claim, Defendant argues that his counsel should have objected to the State's characterization of him as a

"liar." In closing argument, the prosecutor made the following statements:

- "He lied about having permission to take the ladder."

- "How do we know he had the intent, because he lied when he was confronted."

- "And David Del Gallo did not give the Defendant permission to take the ladder, therefore, he did so unlawfully. He didn't tell him he could take it. Didn't tell Jay, the wallpaper guy who doesn't exist that he could take it or that he could tell someone to take it."

- "Did he say I thought it was trash, I was going to scrap it? Forgive or can I have it, or is it trash? No. First, he lied. It was a lie. Jay the wallpaper guy is a lie, okay."

Defense counsel responded, "You know, there's mention of a wallpaper guy. No one seems to know if someone was there or someone wasn't. But think of the circumstances. That's something Mr. Williams said right when he was asked. Guy told me I could take it. There's no evidence that was a lie."

Closing argument is an opportunity for counsel to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Merck v. State, 975 So. 2d 1054, 1061 (Fla. 2007). Having reviewed the record, the Court concludes that the state's argument that Defendant lied when he was confronted by Mr. Del Gallo was reasonably supported by the evidence showing that Mr. Del Gallo had not given permission to anyone to remove his ladder from his premises nor had he given a "wallpaper man" approval to permit someone to take his ladder. Furthermore, the Court does not find that, even if counsel had objected, that the outcome of the trial would have been different. Defendant has not shown that a motion for mistrial would have been properly granted, and the Court does not find that an objection and a curative instruction would have rendered a different result at trial. Defendant is not entitled to relief on this basis.

(Attach. 2, Ex. H at 80-82) (footnotes omitted). The First DCA summarily affirmed. (Attach. 3, Ex. K).

The First DCA's summary affirmance is an "adjudication on the merits" of Williams's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

In reviewing the state court's decision, this court defers to the state court's findings of historical facts, because they are amply supported by the record and because Williams has not rebutted them with clear and convincing evidence to the contrary. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (holding that the AEDPA "affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

Under the facts of this case, fairminded jurists can concur in the state court's conclusion that counsel was not ineffective for failing to object to the prosecutor's questions about the wallpaper man, and the prosecutor's closing argument. The prosecutor's questions about the wallpaper man did not elicit false or misleading testimony, so an objection on that basis would have been futile. Counsel is not

ineffective for failing to raise a non-meritorious objection. *Meders*, 911 F.3d at 1354; *Green*, 882 F.3d at 987.

The prosecutor's comments during closing were not improper—they merely submitted to the jury a conclusion that he argued could be drawn from the evidence, and they were reasonably supported by the record. Accordingly, trial counsel was not ineffective for failing to object. *Miller v. State*, 926 So.2d 1243, 1254-55 (Fla. 2006) ("[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence."); *see Stephens v. Sec'y, Fla. Dep't of Corr.*, 678 F.3d 1219, 1227 (11th Cir. 2012) (rejecting ineffective assistance claim where the prosecutor's comments were not improper); *Chandler v. Moore*, 240 F.3d 907, 914 (11th Cir. 2001) (concluding that the prosecutor was properly commenting on the evidence; that none of the prosecutor's contested statements were improper or erroneous; and that defense counsel could not be deemed ineffective for failing to object to them).

The state court's rejection of Williams's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Williams is not entitled to habeas relief on Ground 13.

**Ground 21** **"Defense counsel rendered ineffective assistance of counsel when he conceeded [sic] that petitioner trespassed during closing arguments, effectively conceeding [sic] guilt without the Petitioner's consent. A deficient performance prejudicing Petitioner. Violating Petitioner's 5th, 6th and 14th Amendments to the U.S. Constitution." (Doc. 7 at 60).**

Williams claims that trial counsel was ineffective for conceding the offense of trespass during closing argument. Williams claims that the concession was improper because counsel did not have his consent, and because it also conceded the essential element of entering or remaining on Del Gallo's property which was the sole disputed issue on the burglary charge. (Doc. 7 at 60-61).

The parties agree that Williams presented this claim to the state courts in his first Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Williams briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 7 at 61-62; Doc. 24 at 100). The State argues that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 100-02).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard set forth above.

### B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in his first Rule 3.850 proceeding as Ground Three of his amended motion. (Doc. 24, Attach. 2, Ex. G at 66-69). The state circuit court identified *Strickland* as the governing legal standard, and denied relief as follows:

> In his third claim Defendant argues that his counsel was ineffective for conceding to the offense of trespass during closing arguments. Defendant argues that conceding to the trespass "also effectively conceded to the essential element of willfully entered or remained in Mr. Del Gallo's property which was the sole issue in dispute in the Burglary offense." He argues that, but for this concession, "there exists a reasonable probability that the jury would have found the Movant not guilty of burglary."

> While whether the Defendant entered the property was an issue in the case, it appears from the record that the crux of the case was Defendant's intent—whether Defendant acted as he did because he believed the ladder had been discarded and believed that he had permission to remove the ladder. More important, though, counsel did not make an unmitigated concession of guilty to trespassing. Rather, the actual argument was as follows:

>> Mr. Del Gallo told you Mr. Williams said, someone said he could have it, okay? And he was as specific as he could be, a wallpaper guy. That's kind of a strange thing for a stranger to say particularly at a house which is also a construction business. That's sort of a weird thing to pull out of the air, but that's for you to decide. But if that's how you feel, if you fell [sic], you know, Mr. Del Gallo has a point. If the ladder was inside there by the trash cans, Mr. Williams should have at least asked somebody. Well, then, that means Mr. Williams is guilty of trespassing, okay? Because he went on a property and he didn't have permission. There's a no trespassing sign that he should have seen. Maybe he did see it but he's not guilty of burglary. You will see in the jury instructions, we talk

about lesser included charges. And one of the charges that
will be on the sheet is trespass, okay? And you can find
him guilty of that, but you can't find him guilty of
burglary, and you can't find him guilty of theft because
there is not proof beyond a reasonable doubt that Mr.
Williams had the intent to something.[sic] He thought it
was trash. He thought it was garbage.

Defense counsel was merely arguing that **if** the jury believed
Defendant had entered the property, but without permission and
without intent to commit theft, that at most they could find Defendant
guilty of trespassing because he lacked the requisite intent. Counsel was
not deficient in his argument, nor can Defendant demonstrate that he
was prejudiced by the statement of his counsel. He is not entitled to
relief on this basis.

(Attach. 2, Ex. H at 76-77) (alterations in original) (footnotes omitted). The First
DCA summarily affirmed. (Attach. 3, Ex. K).

The First DCA's summary affirmance is an "adjudication on the merits" of
Williams's claim, and is reviewed under § 2254(d)'s deferential standard. *See
Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s]
through" the First DCA's unexplained decision to the circuit court's order denying
postconviction relief, and presumes that the First DCA adopted the same reasoning.
*Wilson*, 138 S. Ct. at 1192.

The state circuit court reasonably summarized the substance of trial counsel's
argument. Trial counsel did not concede Williams's guilt of any crime.

The state court also determined, reasonably, that counsel's tactical decision in choosing his closing remarks was reasonable. The Supreme Court has reminded federal habeas courts:

> [C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact," *id.*, at 862, 95 S. Ct. 2550, but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential—and doubly deferential when it is conducted through the lens of federal habeas.

*Yarborough v. Gentry*, 540 U.S. 1, 2 (2003) (quoting *Herring v. New York*, 422 U.S. 853 (1975)) (other citation omitted). Applying the "doubly deferential" standard of § 2254(d), Williams is not entitled to habeas relief on Ground 21.

**Ground 23**    **"Appellate counsel rendered ineffective assistance of counsel for failing to argue on appeal that the prosecutor[']s paraphrasing of Burglary of a Dwelling during closing arguments saying "Trespass plus Theft" equals "Burglary" misstated the law, misleading the jury, rendering the trial court proceedings unreliable was a deficient performance that prejudiced Petitioner, violating Petitioner's 5th, 6th and 14th Amendments to the U.S. Constitution." (Doc. 7 at 65).**

Williams claims that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor's comment—"[t]resspass plus theft is burglary"— misstated Florida law and was fundamental error under Florida law. (Doc. 7 at 66-

67 (quoting prosecutor's remark at Attach. 2, Ex. B at 162)). The parties agree that Williams presented this claim to the First DCA in his habeas corpus petition alleging ineffective assistance of appellate counsel; and that the state court summarily denied relief on the merits. (Doc. 7 at 67; Doc. 24 at 106). The State argues that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 106-110).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of appellate counsel is the *Strickland* standard set forth above. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that *Strickland* is the proper standard for evaluating a claim that appellate counsel was ineffective).

### B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in his state habeas petition as Argument Two. (Doc. 24, Attach. 3, Ex. L at 19-24). The First DCA denied relief in a one-sentence opinion: "The petition alleging ineffective assistance of appellate counsel is denied on the merits." (Attach. 6, Ex. P).

The First DCA's summary decision is an "adjudication on the merits" of Williams's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Because the state court's decision is unaccompanied by an explanation, Williams's burden under § 2254(d) is to "show[ ] there was no

reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. As a reviewing habeas court, this court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

One theory that could have supported the First DCA's decision is that appellate counsel was not ineffective for failing to raise the issue on direct appeal, because (1) the alleged error was not preserved at trial, (2) the alleged error did not amount to fundamental error under Florida law and, as a result, (3) the direct appeal court would not have granted relief if appellate counsel had raised the issue.

The trial transcript establishes that Williams's trial counsel did not object to the prosecutor's comment or move for a mistrial. (Attach. 2, Ex. B at 162). Under Florida law, if a defendant fails to object and move for a mistrial when an allegedly improper prosecutorial comment is made, the comment may be challenged on appeal only if it amounts to "fundamental error." *See Caraballo v. State*, 39 So. 3d 1234, 1249 (Fla. 2010) ("Comments that did not receive a timely objection are not preserved for appellate review and are entitled to relief only where fundamental error has occurred.") (citing *Brooks v. State*, 762 So.2d 879, 898-99 (Fla. 2000)); *Cole v. State*, 866 So. 2d 761, 763 (Fla. 1st DCA 2004) ("Generally, to preserve an issue for

appeal based on improper argument, counsel is required to object and request a mistrial.").

That means that, in Williams's case, unless the unpreserved error that appellate counsel failed to raise was fundamental error under Florida law, the Florida appellate courts would not have granted relief even if counsel had raised the issue on direct appeal. *Caraballo, supra*; *Rutherford v. Moore*, 774 So.2d 637, 646 (Fla. 2000) ("Because this issue was not preserved for review, if it had been raised on appeal, it would have warranted reversal only if it constituted fundamental error.").

The fundamental error determination, then, is determinative of Williams's ineffective assistance of appellate counsel claim. Unless the unobjected-to comment rose to the level of fundamental error, Williams's claim of ineffective assistance of appellate counsel fails on both *Strickland* prongs. *See Pinkney*, 876 F.3d at 1297 ("[U]nless the [unpreserved] instruction error is fundamental, Pinkney's claim of ineffective assistance of appellate counsel fails."). "[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney*, 876 F.3d at 1297; *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); *see also Aparicio v. Artuz*, 269 F.3d 78, 96 (2d Cir. 2001) (holding that appellate counsel

could not be ineffective for failing to make an argument that "would have been futile because the argument had already been waived by trial counsel's failure to raise the objection").

Additionally, "a petitioner cannot show prejudice from the failure of an appellate counsel to raise an issue that would not have been considered on appeal because it was not raised in the trial court." *Pinkney*, 876 F.3d at 1297; *Diaz*, 402 F.3d at 1144-45 (concluding that the failure to raise an issue in the trial court rendered the claim non-meritorious, and as a result appellate counsel did not provide ineffective assistance by failing to raise that claim on appeal); *see also Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013) ("It is . . . crystal clear that there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim."). Prejudice requires a reasonable probability of a different result, *Strickland*, 466 U.S. at 694, and "there is no reasonable probability that the result of an appeal would have been different if appellate counsel had raised an issue the court would have refused to consider because it was not preserved in the trial court." *Pinkney* at 1297. In this case, prejudice, as well as performance deficiency, turns on whether the prosecutor's allegedly erroneous comment was fundamental error under Florida law.

The state habeas court in this case implicitly determined that the prosecutor's comment was not fundamental error under Florida law and, therefore, was not a

viable direct appeal issue.[9] This court must defer to those state-law determinations. *Pinkney*, 876 F.3d at 1299; *Estelle*, 502 U.S. at 67-68; *Callahan*, 427 F.3d at 932.

Because this court will not "second guess" the state habeas court's conclusion that the prosecutor's remark was not fundamental error under state law, Williams cannot demonstrate that appellate counsel was ineffective for failing to raise the issue on direct appeal. *See Pinkney*, 876 F.3d at 1297-99. The First DCA's rejection of Williams's ineffective assistance of appellate counsel claim was neither contrary to, nor involved an objectively unreasonable application of, the *Strickland* standard.[10] Williams is not entitled to habeas relief on Ground 23.

_____

[9] This court gives the First DCA's decision the benefit of the doubt and assumes that the First DCA knew and followed *Strickland*, and that had the First DCA decided that the prosecutor's comment *was* fundamental error, it would have granted Williams relief on his ineffective assistance of appellate counsel claim. Federal courts "faced with a summary state court decision that is subject to more than one interpretation . . . must choose the interpretation of the decision that is consistent with the state court knowing and correctly applying federal law, including ineffective assistance of counsel law." *Pinkney*, 876 F.3d at 1298 (collecting cases from the Eleventh Circuit).

Had the First DCA determined that the prosecutor's comment *was* fundamental error under Florida law but that appellate counsel's failure to raise the issue on appeal was not ineffective assistance of counsel, the state court's decision likely would be an unreasonable application of the *Strickland* standard. *Pinkey* at 1298-99.

[10] This analysis follows the Eleventh Circuit's resolution of a nearly identical claim in *Pinkey*, *supra*. In *Pinkey*, a Florida prisoner claimed that appellate counsel was ineffective for failing to raise an unpreserved jury instruction error on direct appeal.

Page 61 of 75

**Ground 24** **"Appellate counsel was ineffective when he failed to argue that trial counsel was ineffective in failing to raise the fundamental error attending Stealth jury instruction when there is no evidence of stealth, thereby rendering the trial court proceedings unreliable which was a deficient performance that prejudiced Petitioner violating Petitioner's 5th, 6th and 14th Amendments to the United States Constitution." (Doc. 7 at 68).**

Williams claims that appellate counsel was ineffective for failing to raise on direct appeal an ineffective assistance of trial counsel claim based on trial counsel's failure to object to the following standard "stealth" instruction that was included in the instructions for Burglary of a Dwelling:

> You may infer that Brian Tullis Williams had the intent to commit a crime inside a dwelling if the entering of the dwelling was done stealthily and without the consent of the owner or occupant.

(Doc. 24, Attach. 1, Ex. A at 18). Williams argues that the State was not entitled to the instruction because there was no evidence he entered Del Gallo's dwelling stealthily. (Doc. 7 at 68-69).

---

Mr. Pinkney raised his ineffective assistance of appellate counsel claim in a state habeas petition, and the state court summarily denied relief on the merits without explanation.

The Eleventh Circuit determined that the state habeas court's decision must have been based on the jury instruction not being fundamental error. *Pinkney*, 876 F.3d at 1297-99. The Eleventh Circuit deferred to the state court's determination of that state-law issue (as federal habeas courts must), and concluded that because the error was not fundamental, Pinkey could not show that appellate counsel was ineffective for failing to raise it on direct appeal. *Id.*

The parties agree that Williams presented this claim to the First DCA in his habeas corpus petition alleging ineffective assistance of appellate counsel; and that the state court summarily denied relief on the merits. (Doc. 7 at 69; Doc. 24 at 111). The State argues that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 111-15).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of appellate counsel is the *Strickland* standard set forth above.

### B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in his state habeas petition as Argument One. (Doc. 24, Attach. 3, Ex. L at 15-19). The First DCA summarily denied relief on the merits, without explanation. (Attach. 6, Ex. P).

The First DCA's summary decision is an "adjudication on the merits" of Williams's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. This court must determine what theories could have supported the state court's decision, and then determine "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

To the extent Williams claims that appellate counsel was ineffective *for failing to raise the unpreserved instruction error* on direct appeal, his claim fails for

the same reasons outlined in Ground 23 and *Pinkney*. *Id*. at 1297-99. The state habeas court's rejection of Williams's claim reflects its implicit determination that the error was not fundamental error under state law. Deferring to that state-law determination, Williams cannot establish that appellate counsel was ineffective for failing to raise the issue.

To the extent Williams claims that appellate counsel was ineffective *for failing to raise an ineffective assistance of trial counsel claim* based on trial counsel's failure to object to the instruction, he is not entitled to habeas relief. The state habeas court reasonably could have rejected that claim, because the underlying ineffective assistance of trial counsel claim was a weak, if not frivolous issue.

The trial transcript establishes that trial counsel did not "fail to object," but rather *affirmatively requested* that the "stealthy entry" instruction be included. (Attach. 2, Ex. B at 111). This reflects a strategic decision. The strategic nature of counsel's decision, and the reasonableness of it, is established by trial counsel's closing argument. (Attach. 2, Ex. B at 174-67). Counsel focused on the lack of stealth to support Williams's defense that he did not intend to steal the ladder. Counsel explained the defense theory that Williams (1) took the ladder in broad daylight from an area where there was trash, (2) made no attempt to hide or flee when Del Gallo came home, but rather conversed with Del Gallo, and (3) immediately returned the ladder when Del Gallo informed him it was not trash and asked him to put it back.

(*Id.*). An appellate attorney reasonably could have concluded that trial counsel's conduct was reasonable.

Based on the foregoing, the state habeas court reasonably determined that appellate counsel was not ineffective for failing to raise on appeal Williams's proposed ineffective assistance of trial counsel claim. "Appellate counsel cannot be deemed ineffective for failing to raise issues 'reasonably considered to be without merit.'" *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Williams is not entitled to federal habeas relief on Ground 24.

**Ground 25**  **"Appellate counsel was ineffective when he failed to argue that the trial court committed a harmful error when the court told defense counsel that it would be "improper speculation" for him to argue that the ladder was ever anywhere else other than where it is depicted in the photographs prejudicing the petitioner violating Petitioner's 5th, 6th and 14th Amendments to the United States Constitution." (Doc. 7 at 70).**

Williams claims that appellate counsel was ineffective for failing to argue on direct appeal that the trial court committed fundamental error when it warned defense counsel about closing arguments. The trial court's comments arose in this context.

At the close of the evidentiary portion of the trial and outside the presence of the jury, the trial court ruled on the State's motion in limine which sought to prohibit

the defense from arguing that Del Gallo's fence combined with the unfenced driveway did not sufficiently enclose the dwelling and, as a result, fell outside the definition of "structure" or "dwelling" under Florida law. (Attach. 1, Ex. A at 15-16). The parties had argued the motion the morning of trial, outside the presence of the jury, and the trial court had deferred ruling until after he heard the evidence. (Attach. 2, Ex. B at 42-50).

At the close of the evidence, the trial court ruled:

I'm going to deny the motion in limine but with a huge caveat. The definition in State of Florida versus Hamilton, 667 So. 2d 1038, decision of the Florida Supreme Court in 1995, goes into great depth as to the meaning of the legislature and the definition of what is or is not curtilage.

Based upon the testimony that is unrebutted in this case, the la[dd]er in question was clearly within the curtilage of the property. So how am I granting the motion in limine – well, if I were – how am I denying the motion in limine? If I were to grant the motion in limine, I'm basically granting a directed verdict on a fixed question of law and fact. And even though the facts are with [sic] unrebutted, it would be error, I believe, for me to essentially usurp the jury's role.

That said, even though I am denying the motion, Mr. Zimmerman [Defense Counsel], you need to be careful that your closing argument is based upon the testimony and reasonable inferences therefrom. You have suggested by questioning of a law enforcement officer that he did not know where the ladder was and that he's relying on what Mr. Del Gallo said. But there is no evidence to suggest that the ladder was ever anywhere other than where it's depicted on the drawing and where it's shown on the photographs.

So you need to be very careful that any argument that you make – and I'm not gonna tell you what to argue, what not to argue other than

to tell you, don't argue based merely upon speculation that is not supported by any fact that's in the record. So as long as you can stay within that in scripture, then you can certainly argue the jury instructions to the jury and tell them that the State has the burden of proof on each issue including whether it was in or near the dwelling as defined in the jury instructions.

But to argue that the ladder was somewhere other than where it is depicted, would, I think, be an improper speculation that is not based upon any evidence in the record.

MR. ZIMMERMAN: Okay.

(Attach. 2, Ex. B at 143-45).

The parties agree that Williams presented this claim to the First DCA in his habeas corpus petition alleging ineffective assistance of appellate counsel; and that the state court summarily denied relief on the merits. (Doc. 7 at 73; Doc. 24 at 116). The State argues that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 111-15).

## A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of appellate counsel is the *Strickland* standard set forth above.

## B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in his state habeas petition as Argument Nine. (Doc. 24, Attach. 3, Ex. L at 61-76). The First DCA summarily denied relief on the merits, without explanation. (Attach. 6, Ex. P). The First DCA's

summary decision is an "adjudication on the merits" of Williams's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100.

One theory that could have supported the First DCA's decision is that appellate counsel was not ineffective for failing to raise the issue, because there was no error (much less fundamental error) in the trial court's instruction to defense counsel. The trial court merely warned counsel to confine his argument to evidence in the record and not to argue "based merely upon speculation that is not supported by any fact that's in the record." That was an appropriate directive. *See Fenster v. State*, 944 So.2d 477, 480 (Fla. 4th DCA 2006) ("A criminal trial is a neutral arena wherein both sides place evidence for the jury's consideration; the role of counsel in closing argument is to assist the jury in analyzing that evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence.") (citation and alteration omitted).

Even if the trial court's instruction was error, this court must defer to the state habeas court's implicit determination that the unpreserved error was not fundamental error under Florida law and, as a result, was not a viable direct appeal issue. *See Pinkney*, 876 F.3d at 1297-99. Appellate counsel cannot be ineffective for failing to raise an issue that would not have gotten his client any relief. *Id.*; *Nyhuis*, 211 F.3d at 1344.

The First DCA's rejection of this claim was neither contrary to, nor involved an objectively unreasonable application of, the *Strickland* standard. Williams is not entitled to habeas relief on Ground 25.

**Ground 26**    **"Appellate counsel rendered ineffective assistance of counsel by failing to argue that the 3rd element of the standard Burglary instruction was required to be given to the jury, when the State's main witness testified the dwelling's outside curtilage was open to the public as a business. Advanced Construction Services which is listed at 1550 E. Gonzales Street. The same address as the dwelling. Violating Petitioner's 5th, 6th and 14th Amendments to the United States Constitution, ineffective assistance of counsel, due process of law and a fair trial." (Doc. 7 at 74).**

Williams claims that appellate counsel was ineffective for failing to argue on direct appeal that the jury instructions were erroneous because the instruction on Burglary failed to include the section applicable when the premises are open to the public. (Doc. 7 at 74-75). Florida's standard jury instructions provide, in relevant part:

> *Affirmative defenses. Give only if defendant meets his or her burden of production that . . . the premises were open to the public. State v. Hicks, 421 So. 2d 510 (Fla. 1982) and State v. Waters, 436 So. 2d 66 (Fla. 1983).*

> It is a defense to the crime of Burglary if . . . [the premises were open to the public at the time of the entering]. The State has the burden of proving beyond a reasonable doubt that . . . [the premises were not open to the public at the time of the entering].

FL ST CR JURY INST 13.1. (emphasis in original).

The parties agree that Williams presented this claim to the First DCA in his state habeas proceeding alleging ineffective assistance of appellate counsel; and that the state court summarily denied relief on the merits. (Doc. 7 at 75; Doc. 24 at 120-21). The State argues that Williams is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 24 at 121-23).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of appellate counsel is the *Strickland* standard set forth above.

### B.    Section 2254 Review of State Court's Decision

Williams presented this claim to the state courts in the supplement to his state habeas petition. (Doc. 24, Attach. 3, Ex. M). The First DCA summarily denied relief on the merits, without explanation. (Attach. 6, Ex. P). The First DCA's summary decision is an "adjudication on the merits" of Williams's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100.

One theory that could have supported the First DCA's decision is that appellate counsel was not ineffective for failing to raise the alleged instruction error on direct appeal, because it was not preserved for appeal and did not amount to fundamental error under Florida law. The trial transcript establishes that defense counsel neither requested the additional instruction Williams now proposes, nor objected to its absence. (Attach. 2, Ex. B at 108-114 (discussion of instructions for

Burglary); Ex. B at 194 (trial court's inquiry, after charging the jury, whether counsel had any objections to the instructions as read, and defense counsel's response, "No, Your Honor.")).

That being the case, this court applies the analysis in *Pinkney, supra*, and concludes that the First DCA's rejection of Williams's ineffective assistance of appellate counsel claim was neither contrary to, nor involved an objectively unreasonable application of, the *Strickland* standard. Williams is not entitled to habeas relief on Ground 26.

**Ground 27** **"The cumulative effect of trial counsel's deficient performances prejudiced Petitioner denying him a Fundamentally Fair trial. Violating Petitioner's 5th, 6th and 14th Amendments to the United States Constitution." (Doc. 7 at 76).**

Williams claims that "based upon the aforementioned claims the petitioner was denied a fair trial based upon the cumulative errors committed by trial counsel." (Doc. 7 at 76). Williams asserts that he presented this claim to the state courts in his successive Rule 3.850 motion. (*Id*. at 77). The State argues that Williams's "cumulative effect" claim is not cognizable on federal habeas review and, even if cognizable, fails to establish a basis for habeas relief for the reasons outlined in the State's answer to Williams's individual ineffective assistance claims. (Doc. 24 at 124).

The Eleventh Circuit has recognized that, based on the current state of Supreme Court precedent, a cumulative-error claim may not be cognizable on federal habeas review. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law."). While the Supreme Court has not addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance-of-counsel claims, the Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

Williams has not shown that any error of trial counsel undermines the reliability of the jury's finding of guilt. Accordingly, he is not entitled to habeas relief on Ground 27.

## IV.    Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The amended petition for writ of habeas corpus (Doc. 7), challenging the judgment of conviction and sentence in *State of Florida v. Brian Tullis Williams*, Escambia County Circuit Court Case No. 2013-CF-2193, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>10th</u> day of September, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and**

Recommendation. **<u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>** An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.